UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
IN RE:

                                      Chapter 13

DENIS J. COUGHLIN,                      Case No.: 11-76202-AST

                Debtor.
--------------------------------------------------------X
IN RE:

                                        Chapter 13

LOUIS P. SANGAMAYA &
PRISTILA S. SANGAMAYA,              Case No: 12-71109-AST

                Debtors.
--------------------------------------------------------X

## MEMORANDUM OPINION ON EFFECT OF FAILURE TO PAY POST-PETITION MORTGAGE PAYMENTS ON DEBTORS' RIGHTS TO THEIR DISCHARGES, THE COURT'S AUTHORITY TO REVOKE A DISCHARGE, AND <u>REQUEST TO MODIFY A CHAPTER 13 PLAN</u>

*Issues Presented*

      Pending before the Court in these two otherwise unrelated chapter 13 cases is a common issue: whether a chapter 13 debtor is entitled to a discharge when he/she does not make his/her direct post-petition mortgage payments due under a confirmed plan.  The Coughlin case involves the additional issue of whether the Court should vacate a discharge granted to a debtor who failed to make direct post-petition mortgage payments, while the Sangamaya case involves the additional issue of whether debtors should be allowed to modify a confirmed plan in the final month to change the treatment of their home from retain to surrender.

      For the reasons set forth herein, this Court has determined: (1) a chapter 13 debtor's direct payments to a secured creditor pursuant to a "cure and maintain" plan are payments "under the plan" and a debtor who fails to make such payments is not entitled to a discharge under § 1328(a); (2) Coughlin's discharge should not be vacated or revoked because he did not obtain his discharge

1

by fraud and the Court did not issue the discharge through mistake or inadvertence; (3) the Sangamayas may modify their confirmed chapter 13 plan because the timing of the motion is not barred by the Bankruptcy Code, no opposition thereto was filed, and granting their discharge is consistent with prior practice in this district.

## **JURISDICTION**

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (I), (J), (L) and (O), and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

*Coughlin*

On August 31, 2011, Denis J. Coughlin ("Coughlin") filed a petition for relief under chapter 13 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").[1]  At that time, he resided at 214 West Market Street, Long Beach, New York (the "Coughlin Property"), which was encumbered by a mortgage.[2]

Marianne DeRosa was appointed the Chapter 13 Trustee (the "Trustee") for Coughlin's chapter 13 case.

On December 6, 2011, Coughlin filed an Amended Chapter 13 Plan (the "Coughlin Plan"), which provided, *inter alia*, that he would make 60 monthly payments to the Trustee, including pre-petition arrears of $15,000, and pay his post-petition mortgage payments "outside the plan." [11-76202; dkt item 22]

---

[1] Unless otherwise indicated, all statutory references herein are to the Bankruptcy Code.

[2] On July 29, 2004, Coughlin borrowed $250,000 from Washington Mutual Bank, FA ("Washington") to purchase the Coughlin Property, executed a note in the principal amount of $250,000, and executed a mortgage to secure payment of the note by pledging the Coughlin Property as collateral.  On February 3, 2012, the mortgage was assigned to Deutsche (defined infra).  The note was also endorsed in blank by Washington. [11-76202; dkt item 37]

On December 16, 2011, the Court entered an Order confirming the Coughlin Plan.  [11-76202; dkt item 24]

On July 15, 2016, the Trustee filed her Certification of Completed Plan, which provides: "Trustee, states that upon information and belief, the Debtor has completed the Chapter 13 Plan." [11-76202; dkt item 32]

On August 15, 2016, the Trustee filed her Notice of Final Cure Payment and Completion of Payments under the Plan as required by Bankruptcy Rule 3002.1(f) (the "Coughlin 3002.1 Notice").  [11-76202; dkt item 35]

On September 2, 2016, Deutsche Bank National Trust Company as Trustee for Harborview Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2005-9 ("Deutsche"), filed a response to the Coughlin 3002.1 Notice using Official Form 4100R (the "Deutsche Response"), in which Deutsche asserts that Coughlin paid in full the amount required to cure the pre-petition default on Deutsche's claim, but that as of March 1, 2016, he was delinquent on direct post-petition mortgage payments totaling $17,441.25.[3]

On September 20, 2016, the Trustee filed her Final Report and Account, which, *inter alia*, provides that she did not pay any of the post-petition mortgage payments which Coughlin was to pay "outside the plan."  [11-76202; dkt item 36]

On November 15, 2016, JPMorgan Chase Bank, N.A. as Servicer for Deutsche ("JPMorgan"), filed a motion seeking relief from the automatic stay pursuant to § 362(d)(1), alleging that as of March 1, 2016, Coughlin failed to make the post-petition mortgage payments totaling $17,441.25 (the "Coughlin Lift Stay Motion").  [11-76202; dkt item 37]

On December 14, 2016, the Court entered an Order granting Coughlin a discharge under

---

[3] Because of the manner by which the Deutsche Response was docketed, while it appears on the Court's CM/ECF docket, it appears as a "doc" and is not assigned a docket item number.

§ 1328(a) (the "Discharge Order").  [11-76202; dkt item 40]

On December 15, 2016, the Court held a hearing on the Coughlin Lift Stay Motion and raised concerns over whether the Discharge Order was entered inadvertently, in light of the arrearages on post-petition mortgage payments.

On December 21, 2016, the Court issued its Order to Show Cause why the Discharge Order should not be vacated and why the Coughlin Lift Stay Motion should not be granted (the "Coughlin OSC").  [11-76202; dkt item 43]

On January 18, 2017, Coughlin filed opposition to the Coughlin OSC.  [11-76202; dkt item 45]

On January 26, 2017, the Trustee filed a response to the Coughlin OSC, supporting vacating the Discharge Order.  [11-76202; dkt item 48]

On February 2, 2017, JPMorgan filed a response to the Coughlin OSC, arguing why stay relief should be granted, but taking no position on whether the Discharge Order should be vacated.  [11-76202; dkt item 54]

On February 2, 2017, the Court entered an Order granting the Coughlin Lift Stay Motion in favor of JPMorgan.  [11-76202; dkt item 55]

On February 7, 2017, Coughlin filed a supplemental opposition to the Coughlin OSC.  [11-76202; dkt item 56]

*The Sangamayas*

On February 27, 2012, Louis P. Sangamaya and Pristila S. Sangamaya (the "Sangamayas") filed a joint petition for relief under chapter 13.  At that time, they resided at 114 Farmers Avenue,

Bethpage, New York (the "Sangamaya Property"). The Sangamaya Property was encumbered by two mortgages.[4]

Marianne DeRosa was appointed Trustee for the Sangamayas' chapter 13 case.

The Sangamayas' Schedule I listed their combined average monthly income as $5,791.00 and Schedule J listed their average monthly expenses as $5,270.87 including payments on a home mortgage of $2,781.87; thus they showed a monthly net income of $520.13. [12-71109; dkt item 1]

On June 12, 2012, the Court entered an Order granting the Sangamayas' motion to strip off the second mortgage on the Sangamaya Property incident to their chapter 13 plan (the "Sangamaya Second Mortgage"), to be effective upon the Trustee filing her certificate of completion of plan payments. [12-71109; dkt item 19]

On June 13, 2012, the Sangamayas filed their First Amended Chapter 13 Plan, which provided, *inter alia*, for the Sangamayas to make 60 monthly plan payments and that the holder of the Sangamaya First Mortgage will be paid "pre-petition arrears in the sum of $2,781.97 over the life of the plan and to be paid post-petition payments outside the plan." (the "Sangamaya Plan"). [12-71109; dkt item 20]

On June 15, 2012, the Sangamayas filed amended schedules, which provided, *inter alia*, that their combined average monthly income is $6,322.00 and their average monthly expenses are $5,775.87, including $2,781.87 for mortgage payments, for a monthly net income of $546.13. [12-71109; dkt item 25]

---

[4] On July 12, 2006, the Sangamayas borrowed $408,395.00 from Countrywide Home Loans, Inc. ("Countrywide") to purchase the Sangamaya Property, executed a note in the principal amount of $408,395.00, and executed a first lien mortgage to secure payment of the note by pledging the Sangamaya Property as collateral (the "Sangamaya First Mortgage"). On May 8, 2013, that mortgage was assigned to Nationstar (defined infra). The note was also endorsed in blank by Countrywide. [12-71109; dkt item 46]

On June 28, 2012, the Court entered an Order confirming the Sangamaya Plan.  [12-71109; dkt item 26]

On December 17, 2014, the Sangamayas filed their first Motion to Approve Modification of a Confirmed Plan, along with a Second Amended Plan, which did not change the treatment of the Sangamaya First Mortgage.  [12-71109; dkt items 32, 33]

On April 14, 2015, the Sangamayas filed amended schedules, which provided, *inter alia*, that their combined average monthly income is $6,196.57 and their average monthly expenses are $5,922.87, including $2,781.87 for mortgage payments, for a monthly net income of $273.70. [12-71109; dkt item 40]

On May 19, 2015, following a transfer of the Sangamaya First Mortgage, the Sangamayas filed a Third Amended Plan which, again, did not change the treatment of the Sangamaya First Mortgage.  [12-71109; dkt item 42]

On June 3, 2015, the Court entered an Order approving the modification of the Sangamayas' confirmed chapter 13 plan.  [12-71109; dkt item 44]

On May 26, 2016, Nationstar Mortgage LLC ("Nationstar") filed a motion seeking  relief from the automatic stay pursuant to § 362(d)(1) as to the Sangamaya Property, alleging, *inter alia*, that between August 1, 2015 and April 1, 2016, the Sangamayas failed to make nine post-petition mortgage payments of $2,711.36 each for a total of $24,402.24 (the "Sangamaya Lift Stay Motion").  [12-71109; dkt item 46]  The Sangamayas did not file opposition to the Lift Stay Motion.

On June 23, 2016, the Court held a hearing on the Sangamaya Lift Stay Motion, at which Nationstar and counsel for the Sangamayas appeared (the "June 23 Hearing").  Counsel for the Sangamayas represented that they defaulted on the mortgage after February 2016, that one of the

Sangamayas had been having health problems, and as a result had been hospitalized on the day before the June 23 Hearing, and asked for an adjournment of the Sangamaya Lift Stay Motion, which the Court granted.

On August 25, 2016, the Court held an adjourned hearing on the Sangamaya Lift Stay Motion, at which Nationstar appeared and counsel for the Sangamayas appeared; debtors' counsel again represented that one of the Sangamayas had health problems and as a result had sporadic income. At the conclusion of that hearing, the Court found cause to grant Nationstar relief from the automatic stay.

On September 9, 2016, the Court entered an Order granting stay relief in favor of Nationstar. [12-71109; dkt item 49]

On February 15, 2017, the Sangamayas filed amended schedules which provided, *inter alia*, that their combined average monthly income is $2,968.34 and their average monthly expenses are $2,703.00, not including mortgage payments, real estate taxes, and home insurance, for a monthly net income of $265.34. [12-71109; dkt item 50]

On February 16, 2017, the Trustee filed a motion to dismiss the Sangamayas' chapter 13 case for failure to make plan payments. [12-71109; dkt item 51]

On February 23, 2017, being five months after the Court granted stay relief and in the final week of the 60th month of their bankruptcy case, the Sangamayas filed a motion to modify their confirmed Third Amended Plan along with a proposed Fourth Amended Plan, or in the alternative grant the Sangamayas a hardship discharge pursuant to § 1328(b), and additionally grant the Sangamayas' counsel attorneys' fees of $500, and sought an emergency hearing (the "Modification Motion"). [12-71109; dkt items 52, 53, 54] The Modification Motion primarily seeks to address their failure to pay the post-petition mortgage payments by modifying the Third Amended Plan to

surrender the Sangamaya Property to the first mortgagee.  Additionally, the proposed Fourth Amended Plan provides that the debt on the first mortgage shall not be discharged but that "post-petition mortgage payments on this debt shall not be required to otherwise obtain a discharge under 11 U.S.C. 1328."  The proposed Fourth Amended Plan also provides that the Sangamayas will pay the Trustee a total of $22,500.00 over the life of the plan.  [12-71109; dkt item 52]

Due to the Sangamayas' delay in seeking modification, the Court scheduled a hearing in the ordinary course for March 9, 2017, at which the Trustee represented that the Sangamayas' final payment to the Trustee was posted on February 28, 2017.  On March 28, 2017, the Court issued an Order Setting Briefing Schedule on the pending motions.  [12-71109; dkt item 58]

On March 30, 2017, the Trustee filed a response to the Modification Motion stating she does not object to the Modification Motion.  [12-71109; dkt item 59][5]

On April 14, 2017, the Sangamayas filed a reply to the Trustee's response.  [12-71109; dkt item 63]

*Issues*

Resolution of these cases rests on the following issues:

(1)     When a debtor's confirmed chapter 13 plan provides that post-petition mortgage payments will be made by the debtor "outside the plan," are those post-petition mortgage payments included within the meaning of "all payments under the plan" for purposes of § 1328(a), which, absent a hardship as detailed in § 1328(b), requires the court not grant that debtor a discharge?  If the answer is yes, then should

---

[5] On April 7, 2017, while the modification and dismissal issues were pending, the Sangamayas also filed a motion seeking to modify the Order which voided the Sangamaya Second Mortgage.  [12-71109; dkt item 61]  That motion is addressed herein.

the discharge granted to Coughlin be vacated, given his noncompliance with § 1328(a)?

(2)    Is the Sangamayas' Modification Motion timely for being filed in the final week of the last month (here, the 60th month) of their confirmed chapter 13 plan term?  If the motion is timely, should the Modification Motion be granted?   If the Modification Motion is not granted, should the Sangamayas be granted a hardship discharge?

*Statutory Overview and Statutory Construction of "Payments Under the Plan"*

A debtor bears the burden of establishing by a preponderance of the evidence that his or her plan satisfies the requirements of the Bankruptcy Code and is appropriate for confirmation. *See In re Zair*, 535 B.R. 15, 18 (Bankr. E.D.N.Y. 2015), *rev'd*, *HSBC Bank USA, N.A. v. Zair*, 550 B.R. 188 (E.D.N.Y. 2016), *appeal dismissed*, No. 16-1648 (2d Cir. Dec. 7, 2016); *In re Merhi*, 518 B.R. 705, 709 (Bankr. E.D.N.Y. 2014).   The contents of a chapter 13 plan are governed by § 1322, which is generally divided between mandatory provisions outlined in § 1322(a) (what a chapter 13 plan "shall" provide), and permissive provisions outlined in § 1322(b) (what a chapter 13 plan "may" provide).

Section 1325 provides for the circumstances under which a bankruptcy court "shall" and "may not" confirm a plan.   *Hamilton v. Lanning*, 560 U.S. 505, 508 (2010).   As to secured creditors, § 1325(a)(5) directs that a bankruptcy court shall confirm a plan only if one of the following three requirements are satisfied: (1) the holder of such claim has accepted the plan; (2) the debtor's payments to the creditor comply with certain standards and the creditor retains its lien; or (3) the debtor surrenders the property securing such claim to such holder.   *See AmeriCredit Fin.*

*Servs., Inc. v. Tompkins*, 604 F.3d 753, 756 (2d Cir. 2010) (citations and quotations omitted).  As

the United Stated District Court for the Eastern District of New York recently stated:

> [t]hese are the exclusive methods of repaying a secured creditor, and
> a proposed Chapter 13 plan which, as to each secured claim, does
> not satisfy one of these three requirements, cannot be confirmed,
> even if the plan complies with the Bankruptcy Code in all other
> respects.

*Zair*, 550 B.R. at 190.

Congress provided chapter 13 debtors with the option to make payments directly to their

creditors.  Section 1326(c) provides that "[e]xcept as otherwise provided in the plan or in the order

confirming the plan, the trustee shall make payments to creditors under the plan."  *See Mendoza*

*v. Temple-Inland Mortg. Corp. (In re Mendoza)*, 111 F.3d 1264, 1269 (5th Cir. 1997) (holding that

while § 1326(c) provides that payments are generally made through the trustee "Chapter 13 permits

the debtor to act as the disbursing agent and to make payments to a creditor directly."); *In re*

*Aberegg*, 961 F.2d 1307, 1309 (7th Cir. 1992).  Many districts in the United States have chosen to

expressly act as "conduit districts," meaning all plan payments must be made through the office of

the standing chapter 13 trustee in accordance with § 1326(c); debtors in those districts may not

make direct payments to creditors.  *See In re Heinzle*, 511 B.R. 69, 74 (Bankr. W.D. Tex. 2014);

*see, e.g., Local Rule 3015-1(b) for the United States Bankruptcy Court for the Southern District of*

*Texas*, effective December 1, 2015 ("Home mortgage payments will be made through the chapter

13 trustee[.]"); *Local Rule 3070-1 for the United States Bankruptcy Court for the Eastern District*

*of Michigan*, effective February 1, 2016 ("In a chapter 13 case, all claims must be paid by and

through the chapter 13 trustee unless the debtor's plan establishes cause for remitting payments on

a claim directly to the creditor.").  However, many districts, including the Eastern District of New

York, have chosen not to require debtors to make their post-petition mortgage payments through

the chapter 13 trustee, but rather allow such payments to be made directly to the secured creditor

in accordance with § 1326(c). *See Heinzle*, 511 B.R. at 74; *see also* Gordon Bermant & Jean

Braucher, *Making Post-Petition Mortgage Payments Inside Chapter 13 Plans: Facts, Law, Policy*,

80 AM. BANKR. L.J. 261, 270 (2006).

As for the timing of a discharge, § 1328(a) provides in relevant part:

> as soon as practicable after completion by the debtor of all payments
> under the plan,…the court shall grant the debtor a discharge of all
> debts provided for by the plan or disallowed under section 502 of
> this title, except any debt—
>
> (1) provided for under section 1322(b)(5)[.]

11 U.S.C. § 1328(a)(1). Thus, the first issue here is what does "payments under the plan" mean?

The United States Supreme Court has addressed what "provided for by the plan" means in

the chapter 13 context in construing § 1325(a)(5). In *Rake v. Wade*, 508 U.S. 464, 473 (1993), the

Court addressed whether a secured creditor who was not entitled to interest on a pre-petition

contract was nonetheless entitled to interest under a chapter 13 plan. *Rake* consisted of several

chapter 13 cases in which a common creditor, William J. Wade, as trustee ("Wade"), held notes

secured by first mortgages on the debtors' principal residences; the notes allowed a $5 charge for

each missed payment but did not provide for interest on arrearages; the mortgages provided that

in the event of a default by an obligor, the holder of the note could accelerate the debt and foreclose

on the property. Because the value of the residence owned by each of the debtors exceeded the

outstanding balance on the corresponding notes, Wade was an oversecured creditor in each chapter

13 case.

Each debtor's plan proposed to pay Wade directly all future payments of principal and

interest due on the notes, and to cure the defaults on the mortgages by paying off the arrearages,

without interest, over the term of the plans. The bankruptcy court approved the plans, and the

district court affirmed, but the Court of Appeals for the Tenth Circuit reversed, holding that Wade

was entitled to interest on the arrearages. *Wade v. Hannon*, 968 F.2d 1036, 1042 (10th Cir. 1992). The Tenth Circuit focused on § 506(b), as interpreted in *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235 (1989), in determining that an oversecured creditor is to receive post-petition interest on arrearages and other charges paid off under a chapter 13 plan, "even if the mortgage instruments are silent on the subject and state law would not require interest to be paid." *Wade*, 968 F.2d at 1042.

The Court affirmed, and started its analysis by stating that "[t]hree interrelated provisions of the Bankruptcy Code determine whether respondent is entitled to interest on those arrearages: §§ 506(b), 1322(b), and 1325(a)(5)." *Rake*, 508 U.S. at 467-68. In focusing on the "plain language of the Code," the Court looked to § 1325(a)(5), which applies by its terms to "each allowed secured claim provided for by the plan," and stated:

> [t]he most natural reading of the phrase to "provid[e] for by the plan" is to "make a provision for" or "stipulate to" something in a plan. See, *e.g.*, American Heritage Dictionary 1053 (10th ed. 1981) ("provide for" defined as "to make a stipulation or condition"). Petitioners' plans clearly "provided for" respondent's home mortgage claims by establishing repayment schedules for the satisfaction of the arrearages portion of those claims. As authorized by § 1322(b)(5), the plans essentially split each of respondent's secured claims into two separate claims—the underlying debt and the arrearages. While payments of principal and interest on the underlying debts were simply "maintained" according to the terms of the mortgage documents during the pendency of petitioners' cases, each plan treated the arrearages as a distinct claim to be paid off within the life of the plan pursuant to repayment schedules established by the plans. Thus, the arrearages, which are a part of respondent's home mortgage claims, were "provided for" by the plans, and respondent is entitled to interest on them under § 1325(a)(5)(B)(ii).

*Rake*, 508 U.S. at 473 (internal footnote omitted).

The Court went on to discuss other provisions of chapter 13 containing the phrase "provided for by the plan," as making "clear that petitioners' plans provided for respondent's home mortgage claim." *Rake*, 508 U.S. at 474–75. The Court referred specifically to § 1328(a) which:

> utilizes the phrase "provided for by the plan" in dealing with the discharge of debts under Chapter 13. As used in § 1328(a), that phrase is commonly understood to mean that a plan "makes a provision" for, "deals with," or even "refers to" a claim. See 5 Collier ¶ 1328.01, at 1328–9. In addition, § 1328(a) unmistakably contemplates that a plan "provides for" a claim when the plan cures a default and allows for the maintenance of regular payments on that claim, as authorized by § 1322(b)(5). Section 1328(a) states that "all debts provided for by the plan" are dischargeable, and then lists three exceptions. One type of claim that is "provided for by the plan" yet excepted from discharge under § 1328(a) is a claim "provided for under section 1322(b)(5) of this title." § 1328(a)(1). If claims that are subject to § 1322(b)(5) were not "provided for by the plan," there would be no reason to make an exception for them in § 1328(a)(1).

*Rake*, 508 U.S. at 474–75 (internal footnotes omitted).  Section 1322(b)(5) has the same text now as when *Rake* was decided in 1993, and allows for a chapter 13 plan to:

> provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]

11 U.S.C. § 1322(b)(5).

The Court further noted in *Rake*, as it had previously in *United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988) and then subsequently in *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004), that statutory terms are often "clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes [their] meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law."  Thus, the Court concluded that under § 1325(a)(5), Wade was entitled to the present value of arrearages paid

off under the terms of the plans as an element of an "allowed secured claim provided for by the plan." *Rake*, 508 U.S. at 474–75.

While *Rake* specifically interpreted the meaning of "provided for by the plan" under chapter 13, numerous courts have expressly addressed the meaning of the very similar "payments under the plan" as contained in § 1328(a), and have reached the conclusion that post-petition mortgage payments are "payments under the plan" even if being paid directly by the debtor.

Recently, the Court of Appeals for the Fifth Circuit addressed the precise issue here.

> The Kesslers filed for Chapter 13 bankruptcy in November 2009, and the bankruptcy court confirmed their plan. Their Chapter 13 plan provided for monthly payments to a trustee to cure their pre-petition mortgage arrears and for direct payments to certain secured creditors, including regular, post-petition mortgage payments to Bank of America Home Loans ("BOA"), the mortgagee. The Kesslers completed all payments due to the trustee, but did not make the direct mortgage payments, resulting in a post-petition arrearage of $40,922.89.

*Kessler v. Wilson (In re Kessler)*, 655 F. App'x 242, 243 (5th Cir. 2016). The Fifth Circuit held as follows:

> Because the Kesslers failed to complete post-petition mortgage payments that fall under the plan, they do not qualify for discharge under the plain terms of § 1328(a), which instructs a court to grant discharge only after completion of *all* payments under the plan.

*Id.* at 244 (emphasis in original). *See also Foster v. Heitkamp (In re Foster)*, 670 F.2d 478, 488-89 (5th Cir. 1982) (debtors' mortgage payments made directly to their lender constituted plan payments notwithstanding the payments being characterized by the debtors as being made outside the chapter 13 plan); *Evans v. Stackhouse*, 564 B.R. 513, 525-28 (E.D. Va. 2017); *In re Hoyt–Kieckhaben*, 546 B.R. 868, 871 (Bankr. D. Colo. 2016); *In re Gonzales*, 532 B.R. 828, 832 (Bankr. D. Colo. 2015) (finding no cogent authority to suggest that payments to be made directly to a creditor pursuant to the terms of a confirmed plan are not "payments under the plan" as used in §

1328(a)); *Heinzle*, 511 B.R. at 75-78; *In re Hankins*, 62 B.R. 831, 835 (Bankr. W.D. Va. 1986) (direct payments "are nonetheless payments 'under the Plan' in the sense that they are dealt with by the Plan[.]"); *In re Perez*, 339 B.R. 385, 390 n.4 (Bankr. S.D. Tex. 2006). *But see In re Diggins,* 561 B.R. 782, 787 (Bankr. D. Colo. 2016) (concluding "it would be inequitable to deny discharge in this unique situation," as debtor "regularly paid her mortgage for four years of her plan, and then acted promptly to modify the mortgage as soon as her income dropped.  Even if this Court believed that Debtor's temporary inability to make payments to Carrington as they worked out a modification was a default, it was not material under 11 U.S.C. § 1307(c)(6).")[6]

Finally, absent compelling circumstances meriting a plan modification or discharge under § 1328(b), this Court views granting a discharge to a debtor who has not paid substantial sums dedicated to post-petition mortgage payments as contrary to the chapter 13 process.  As the Court has stated, the inherent bargain of chapter 13 is as follows:

> Debtors filing for protection under Chapter 13 of the Bankruptcy Code must agree to a court-approved plan under which they pay creditors out of their future income. If the bankruptcy trustee or an unsecured creditor objects, a bankruptcy court may not approve the plan unless it provides for the full repayment of unsecured claims or "provides that all of the debtor's projected disposable income to be received" over the plan's duration "will be applied to make payments" in accordance with plan terms. 11 U.S.C. § 1325(b)(1).

---

[6] Cases such as *Kessler* and *Evans* could be read to limit their analysis to plans that cure a pre-petition arrearage on the mortgage and continue post-petition payments:

> Section 1322(b)(5) provides that a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any ... secured claim on which the last payment is due" after the deadline for a final payment for the plan (emphasis added). Thus, … although a Chapter 13 plan does not necessarily need to provide for curing of default on long-term debts under Section 1322(b)(5), if a plan does, the plan must also provide for maintenance of post-petition payments. As the payments that will go toward the curing of pre-petition arrears and the payments that will go toward post-petition maintenance concern the same claim, both types of payments—regardless of who the recipients of the payments are—will fall "under the plan."

*Evans*, 564 B.R. at 526 (emphasis in original).

Here, because both plans propose to cure pre-petition arrears through payments made by the Trustee and then pay post-petition payments directly, this Court need not address whether a different result might ensue if these debtors were current on their mortgages at the petition date yet chose to retain their houses and directly pay post-petition payments.

*Lanning*, 560 U.S. at 505.  The issue in *Lanning* was whether the calculation of the projected disposable income to be dedicated to a plan is based on a static, backwards-looking approach, or a dynamic forward-looking approach.  The Court held: "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation."  *Id.* at 524.

A year after *Lanning*, the Court again looked at chapter 13, and similarly stated "Chapter 13 of the Bankruptcy Code enables an individual to obtain a discharge of his debts if he pays his creditors a portion of his monthly income in accordance with a court-approved plan." *Ransom v. FIA Card Servs., N.A.,* 562 U.S. 61, 64 (2011).  The *Ransom* Court addressed a chapter 13 debtor, Jason Ransom ("Ransom"), who owned an unencumbered vehicle and did not make loan or lease payments.  In calculating the amount of his disposable income available to pay unsecured creditors, Ransom took a deduction for a vehicle-ownership expense based on a nationwide figure for monthly loan or lease payments.  The *Ransom* Court focused on what deductions a debtor may claim in formulating his plan and stated that as a general matter, the debtor is to dedicate all of his income to his plan, and to pay his "disposable income" to his unsecured creditors.[7]  The *Ransom*

---

[7] Section 1325 provides in part:

    (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

        (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

        (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

    (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

        (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

        (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the

Court went on to note that the Bankruptcy Code "initially defines a debtor's disposable income as his 'current monthly income ... less amounts *reasonably necessary to be expended.*' " *Ransom*, 562 U.S. at 70 (emphasis in original); § 1325(b)(2).   For an above-median-income debtor, § 1325(b)(3) then instructs that amounts reasonably necessary to be expended shall be determined in accordance with subparagraphs (A) and (B) of § 707(b)(2), which is the statutory formula known as the "means test."

The *Ransom* Court stated

> Because Congress intended the means test to approximate the debtor's reasonable expenditures on essential items, a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category. If a debtor will not have a particular kind of expense during his plan, an allowance to cover that cost is not "reasonably necessary" within the meaning of the statute.

*Ransom*, 562 U.S. at 70–71 (internal footnote omitted).   The Court went on to hold that because Ransom "owns his vehicle free and clear of any encumbrance, he incurs no expense in the 'Ownership Costs' category of the Local Standards," and thus may not claim that deduction.  *Id*. at 73.

Various courts have held that a chapter 13 debtor may not deduct an expense he or she is not actually paying or incurring at the time of confirmation nor expecting to pay or incur during the life of the plan.  For example, Judge Grossman of this Court noted in addressing a chapter 13 plan:

> Section 707(b)(2)(A)(iii) deals specifically with expense deductions for secured debt repayments … [and allows a debtor to] take a monthly deduction for the total amount of payments "scheduled as contractually due" to a secured creditor within the 60–month period of a debtor's plan, divided by 60.

---

year in which the contributions are made[.]
11 U.S.C. § 1325(b).

*In re Mendelson*, 412 B.R. 75, 79 (Bankr. E.D.N.Y. 2009). Judge Grossman went on to disallow a car expense, even though § 707(a) allows such a deduction, because Debtor's ex-husband was contractually liable on the debt securing the vehicle, he exclusively drove it, and because debtor admitted that she had no intention of making the payments; thus, the expense was not "reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor" under § 1325(b)(2). *Id*. at 81–82.

Similarly, Judge Grossman had also disallowed a deduction for chapter 13 purposes of a mortgage payment on a residence that the debtor intended to surrender. "One of the main requirements in Chapter 13 is that a plan be funded with all of a debtor's disposable income, it would go against the very essence of Chapter 13 to allow a debtor to deduct an expense that he has stated he does not intend to actually pay during the life of the plan." *In re Rahman*, 400 B.R. 362, 370 (Bankr. E.D.N.Y. 2009). In *Rahman*, the debtor's plan clearly provided "that it is his intent to surrender the subject property and he does not intend to make any of the scheduled payments," and because the determination of projected disposable income is forward-looking, the court held that the debtor could not take an expense deduction for his home mortgage. *Id*.

This line of reasoning has been extended to second mortgages for property the debtor has had reclassified as unsecured or "stripped off." *In re Kramer*, 495 B.R. 121, 123–24 (Bankr. D. Mass. 2013), *aff'd*, 505 B.R. 614 (B.A.P. 1st Cir. 2014) (given debtors' intention to treat second mortgage lien as unsecured claim under their plan, while the mortgage could be deducted for means test purposes of § 707(b)(2)(A)(iii)(I), it could not be deducted in calculating debtors' forward-looking projected disposable income under § 1325); *In re Garrepy*, 501 B.R. 13, 17 (Bankr. D. Mass. 2013) (debtors who claimed deduction for an underwater second mortgage that they

intended to strip off "failed to commit all their projected disposable income to their chapter 13 plan" and therefore plan would not be confirmed).

Chapter 13 debtors who do not pay their post-petition mortgage payments are essentially claiming a deduction to which they are not entitled. If a debtor stated at confirmation that he did not intend to pay a mortgage and was surrendering the property securing the mortgage, he would not be able to deduct that mortgage payment. *In re Van Bodegom Smith*, 383 B.R. 441, 455 (Bankr. E.D. Wis. 2008) ("[I]f a debtor intends to surrender collateral, then the payments … cannot be subtracted from the current monthly income to reach the 'projected' disposable income.") Similarly, if a debtor harbored an undisclosed intent to stop paying his mortgage post-confirmation, he should not be rewarded for clandestinely claiming a deduction to which he would otherwise not be entitled. However, if a debtor intending to pay his mortgage loses the ability to pay his mortgage post-confirmation because he lost his job or incurred unanticipated expenses, he could seek to modify the plan to better reflect his changed financial circumstances or, if applicable, seek a hardship discharge under § 1328(b).

In a conduit district, the chapter 13 trustee would know fairly quickly if the debtor had stopped paying the mortgage and could seek an appropriate remedy, such as dismissal, if the debtor did not seek to modify his plan. In a direct-pay district, unless the mortgage company moves for stay relief or dismissal, the debtor would know he stopped paying his mortgage, but the trustee, the court and other creditors would not know, certainly not until the trustee files her notice of final cure payment, triggering the mortgage holder's obligation to comply with Rule 3002.1 (further discussed below).

The Bankruptcy Code should not be read to allow the anomalous result which would ensue if post-petition mortgage payments made directly by the debtor were not considered payments

under the plan, whereas the same payments required to be made in a conduit district would unquestionably be payments under the plan.  In a conduit district, the trustee would not certify the debtor had completed her plan payments and the debtor would not receive a discharge. Whether post-petition mortgage payments are paid directly by the debtor or paid by the chapter 13 trustee should not be dispositive of granting a discharge under § 1328(a); said otherwise, a direct-pay debtor should not receive a discharge that a conduit debtor would not; this is inconsistent both with the words and intent of chapter 13.

Thus, from a statutory construction standpoint, and based on a holistic reading of chapter 13, Coughlin's and the Sangamayas' direct post-petition mortgage payments are payments under the plan for purposes of § 1328(a), which, absent other circumstances, would require this Court to not grant these debtors a discharge under their respective confirmed plans.

*Whether the Court Should Vacate Coughlin's Discharge*

The Trustee supports vacating the Coughlin Discharge Order, while Coughlin opposes and JPMorgan takes no position.  The Trustee argues that two bases exist to revoke a discharge: either (a) § 1328(e), which provides that the court may revoke a debtor's discharge only if: (1) such discharge was obtained by the debtor through fraud; and (2) the requesting party did not know of such fraud until after the discharge was granted; or (b) under Rule 60(b)(1), which provides that the court may relieve a party from an order for "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1).  Because Coughlin was not entitled to a discharge for not having made his post-petition mortgage payments, the Trustee argues this Court may invoke Rule 60(b)(1), and relies on *Gonzales*, 532 B.R. 828, in support of such revocation.   This Court disagrees.

The Bankruptcy Code and Rules set forth a protocol for the end stages of a chapter 13 plan and case.  Among these, under Rule 3002.1(f), once the debtor has completed all plan payments, the chapter 13 trustee is to file and serve a notice to the holders of mortgages against the debtor's principal residence that the debtor has paid in full the amount required to cure any default on the claim.  The mortgage holders then have 21 days under Rule 3002.1(g) to file a statement as to whether debtor has paid in full the amount required to cure the default on the claim and is, in fact, current on his/her post-petition payments.  Thereafter, the debtor or the trustee has 21 days under Rule 3002.1(h) to file a motion and the court shall, after notice and hearing, determine whether the debtor has paid all post-petition amounts.  Part of the reason for the implementation of this 2011 rule was to avoid post-discharge disputes between debtors and their home mortgage lenders as to any pre-discharge defaults; "a debtor and the trustee have to be informed of … the amount of the postpetition payment obligations."  *In re Gravel*, 556 B.R. 561, 569 (Bankr. D. Vt. 2016) (citing FED. R. BANKR. P. 3002.1 Advisory Committee Note (2011)).  As Coughlin is located in a direct-pay district, the Trustee stated that she did not pay any of the post-petition mortgage payments which Coughlin affirmatively agreed to pay "outside the plan."  Deutsche filed its response to the Coughlin 3002.1 Notice, asserting that Coughlin was several months in arrears on his post-petition mortgage payments totaling $17,441.25.  Coughlin does not dispute his delinquencies.

However, the facts of *Gonzales* are different.  There, the trustee filed a Rule 3002.1 notice and each debtor certified, under penalty of perjury, that "I have completed all payments and obligations required by my Chapter 13 Plan."  The mortgagee filed a response to the trustee's Rule 3002.1 notice and stated that the debtors failed to make all of their direct post-petition payments on their mortgage and that $49,377.71 remained unpaid.  Following the mortgagee's response, the trustee filed a notice that the debtors made all of their payments to her, and the court subsequently

entered a discharge order. Thereafter, the court entered an order directing the debtors and the trustee to show cause "why the Court should not revoke the Debtors' discharges in this case as being *improvidently granted*." *Gonzales*, 532 B.R. at 829-30 (emphasis added). Following briefing by the parties and a hearing, the court ultimately found that the debtors were not "entitled to entry of a discharge" and thus vacated their discharge order.[8]

While *Gonzales* does not specify the authority under which it determined that the discharges should be revoked, it focused on whether debtors were entitled to a discharge under § 1328(a) and stated:

> Why should the Court care about a discharge that is improperly entered when the obligation the Debtors defaulted on is not even affected by the discharge?
>
> The answer is that a discharge is a significant privilege to which a debtor is not entitled unless the requirements of § 1328 are met. Of particular concern in this case is the § 506 valuation motion to strip off a second mortgage that the Court approved.

*Gonzales*, 532 B.R. at 833. Ultimately, the *Gonzales* court revoked the discharges out of concerns for the integrity of the system rather than specific conduct attributable to the debtors, and by inference, found that granting the discharges a mistake under Rule 60(b)(1).

This Court takes a narrower view, and finds no questionable conduct by Coughlin or the Trustee. The Code provides for revocation of a discharge under § 1328(e), which states:

---

[8] The *Gonzales* court stated:
> The Court does not condone the Debtors' filing of false certifications. However, it appears that the Debtors filed their certifications without the guidance of counsel and their failure to understand the full implications of the certification they were filing may be somewhat understandable. The Court finds the Trustee's action more troubling. In order to file her request for the Court to enter the Debtors' discharge, she had to turn a blind eye to BAC's response to her Rule 3002.1 Notice, which clearly contained an allegation that the Debtors had not complied with their obligation to make direct payments to BAC. Regardless of whether the Trustee felt she was in a position to prosecute a motion to deny the Debtors their discharge and dismiss their case, it was not appropriate to request entry of the Debtors' discharge after having received notice of a very substantial default in post-petition payments to BAC under the Debtors' confirmed plan.

*Gonzales*, 532 B.R. 832–33.

> On request of a party in interest before one year after a discharge under this section is granted, and after notice and a hearing, the court may revoke such discharge only if—
> (1) such discharge was obtained by the debtor through fraud; and
> (2) the requesting party did not know of such fraud until after such discharge was granted.

Clearly, no basis exists here to revoke Coughlin's discharge under § 1328(e); there is no allegation that Coughlin committed fraud or that Coughlin defrauded a party who only learned of the fraud after the discharge was granted. *See generally Beskin v. Knupp (In re Knupp)*, 461 B.R. 351, 354 (Bankr. W.D. Va. 2011) ("The burden of proof rests upon the party seeking revocation of the discharge. The party seeking revocation must satisfy all of the elements of proof enumerated [in § 1328(e)] by a preponderance of the evidence.") Coughlin did not file an affidavit representing that he made his post-petition mortgage payments as the *Gonzales* debtors did, and cannot be said to have made a misrepresentation to the Court.

Finally, as this Court has previously noted, "[r]evocation of a discharge is an extraordinary remedy." *Pergament v. Marandos (In re Marandos)*, 391 B.R. 556, 559 (Bankr. E.D.N.Y. 2008) (citing *Bowman v. Belt Valley Bank (In re Bowman)*, 173 B.R. 922, 924 (B.A.P. 9th Cir. 1994); *Keeffe v. Natalie*, 337 B.R. 11, 13 (N.D.N.Y. 2006)). In *Marandos*, the chapter 7 trustee sought to revoke a debtor's discharge under § 727(d)(3), which the court denied. In addition, the trustee had sought to revoke the discharge under § 105; this Court declined "to conclude that it could and should invoke its equitable powers to revoke Debtor's discharge" as the Bankruptcy Code had express bases under § 727(d) to exercise this extraordinary remedy. *Marandos*, 391 B.R. at 560.

As to Rule 60(b)(1), the Trustee asserts "[t]his Court may use Rule 60(b) to vacate the discharge order as it was a mistake to enter the discharge order without having resolved the Motion for Relief from Stay." [11-76202; dkt item 48] While it may have been better to not issue the Discharge Order until the Coughlin Lift Stay Motion was resolved, the mere fact that a pleading

docketed as a request for stay relief is filed does not indicate that a debtor has failed to make a plan payment; for example, stay relief could be sought to continue litigation to pursue insurance proceeds or to obtain co-debtor stay relief under § 1301(c) even as to a debtor who is current on plan payments. Further, the Trustee filed her Certification of Completed Plan, the Coughlin 3002.1 Notice, and her Final Report and Account before the Coughlin Stay Relief Motion had been filed, and no motion to dismiss was pending. As the Trustee concedes, the documents customarily filed before issuance of a discharge in this district had been filed:

> In this District, the Court enters an eligible debtor's discharge upon the filing of three documents: 1) Trustee's Certification of Completed Plan; 2) Certificate of Debtor Education; and 3) Debtor's Certifications Regarding Domestic Support Obligations and Section 522(a) (hereinafter the "Three Documents").

(footnote omitted). [11-76202; dkt item 48] No party-in-interest filed a request that the Court defer issuing the discharge pending the outcome of the Coughlin Lift Stay Motion, and the movant in that motion, JPMorgan, does not oppose Coughlin retaining his discharge.

In the Second Circuit, the reference to "mistake" in Rule 60(b)(1) has been held to include mistakes made by the court. *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 670 (2d Cir. 1977) (citing *Tarkington v. United States Lines Co.*, 222 F.2d 358, 360 (2d Cir. 1955)); *In re Old Carco LLC*, 423 B.R. 40, 45 (Bankr. S.D.N.Y. 2010), *aff'd*, No. 10 CIV. 2493 (AKH), 2010 WL 3566908 (S.D.N.Y. Sept. 14, 2010), *aff'd sub nom.*, *Mauro Motors Inc. v. Old Carco LLC*, 420 F. App'x 89 (2d Cir. 2011). Further, the Second Circuit acknowledges that Rule 60(b) is not a substitute for a direct appeal from an erroneous judgment, and that a court may employ Rule 60(b)(1) to correct its own substantive error, whether a mistake of law or mistake of fact. *Old Carco*, 423 B.R. at 47.

As Chief Judge Craig of this Court has stated, "The term 'mistake' as used in Rule 60(b)(1) refers to an excusable litigation mistake or a court's substantive mistake in law or fact. Excusable

neglect is an 'elastic concept,' that considers all relevant circumstances, including prejudice to the non-movant, length of the delay, potential impact on judicial proceedings, reason for the delay (including whether it was within the control of the movant), and whether the movant acted in good faith." *In re Wassah*, 417 B.R. 175, 183 (Bankr. E.D.N.Y. 2009) (internal citations omitted).

Prior to Coughlin receiving his discharge, no published opinion had been issued in this district holding that direct mortgage payments are payments under a plan or that a court should not issue a discharge after a mortgagee has filed a Rule 3002.1(g) statement that a debtor is not current under the plan. Even if the court in *Gonzales* had undertaken a Rule 60(b) analysis and concluded that the debtors' discharges should be vacated because they were issued by mistake, the facts and law here are distinguishable; approximately 16 months before the court issued its order to show cause in *Gonzales*, the same bankruptcy judge had issued a decision which held that a debtor who fails to make direct payments to a mortgagee outside the plan "is not entitled to a Chapter 13 discharge under § 1328(a) because she has not made all payments under her Plan." *In re Daggs*, No. 10–16518 HRT, 2014 Bankr. LEXIS 2509, at *8 (Bankr. D. Colo. Jan. 6, 2014). Here, as noted, there is no prior decision from this Court that would provide guidance on whether Coughlin would be entitled to a discharge for not having paid his mortgage.

Further, while a timely appeal could have been filed from the Coughlin Discharge Order, no appeal or motion to reconsider was filed by any party-in-interest, only responses to the Court's OSC. Finally, Coughlin would be left without an ability to seek to modify his confirmed plan while the Sangamayas were able to do so.

Also helpful here is the Supreme Court's analysis in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 276 (2010). In *Espinosa*, in 1993, the bankruptcy court confirmed a plan that provided for a discharge of a portion of a student loan debt without an adversary proceeding

having been commenced or the court having made a determination that the exception of the debt would cause an undue hardship under § 523(a)(8).  The creditor had received notice of Espinosa's plan and its treatment of the student loan debt, but failed to file an objection.  In 1997, Espinosa completed the payments on his student loan principal as required by the plan, and shortly thereafter, the bankruptcy court entered an order which, *inter alia*, discharged Espinosa's student loan interest.

In 2000, the United States Department of Education ("DOE") tried to collect the unpaid interest on Espinosa's student loans, and in 2003, Espinosa filed a motion asking the bankruptcy court to enforce its 1997 discharge order by directing the DOE and United Student Aid Funds, Inc. ("United"), to cease all efforts to collect the unpaid interest on his student loan debt.  *Espinosa*, 559 U.S. at 265–66.  DOE and United argued that the confirmation order should be vacated under Rule 60(b)(4), asserting the confirmation order was void because of a jurisdictional defect.  On appeal, the Court declined, stating that Rule 60(b)(4) "strikes a balance between the need for finality of judgments and the importance of ensuring that litigants have a full and fair opportunity to litigate a dispute. Where, as here, a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate, and the party's failure to avail itself of that opportunity will not justify Rule 60(b)(4) relief. We thus agree with the Court of Appeals that the Bankruptcy Court's confirmation order is not void." *Espinosa*, 559 U.S. at 275-76.

Similarly, while the issue here arises under Rule 60(b)(1), there is no jurisdictional prohibition to this Court having granted Coughlin a discharge, and as noted, there was no precedent in this district determining that failure to make post-petition mortgage payments could result in a discharge not being issued.

Thus, as the Court issued the Coughlin Discharge Order as it routinely had, and no contrary precedent existed in the district at the time, it is difficult to conclude that the Coughlin Discharge Order was issued as a mistake as contemplated by Rule 60(b)(1).

*Whether This Court Should Grant the Sangamayas' Modification Motion*

The Sangamayas have requested that the Court enter an Order modifying their chapter 13 plan to surrender the Sangamaya Property to Nationstar, in anticipation that the Court might not grant the Sangamayas a discharge due to their failure to make direct mortgage payments. Nationstar did not file an objection to the Modification Motion.  The Trustee filed a response stating she does not object to the Modification Motion.

Section 1329 of the Bankruptcy Code governs the modification of a confirmed chapter 13 plan and provides that a chapter 13 plan "may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim."  11 U.S.C. § 1329(a). The Court first addresses whether the Bankruptcy Code's temporal limits bars the Court from granting the Sangamayas' Modification Motion filed in the final week of their 60-month chapter 13 plan and before their last payment had posted.

Under § 1329,[9] a modified plan "may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due." 11 U.S.C. § 1329(c); *see Danielson v. Flores*

---

[9] A confirmed chapter 13 plan may be modified pursuant to § 1329(a) upon request of the debtor, the trustee, or the holder of an allowed unsecured claim to

    (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

    (2) extend or reduce the time for such payments;

    (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or …

    (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor…

11 U.S.C. § 1329(a).

*(In re Flores)*, 735 F.3d 855, 859 (9th Cir. 2013). *Cf. In re Klaas*, No. 15-3341, 2017 WL 2367976, at *6 (3d Cir. June 1, 2017) (noting that a plan cannot be modified for a term that is greater than five years but holding a "court may deny a motion to dismiss and/or grant a completion discharge when there remains at the end of that plan term a shortfall that the debtor is willing and able to cure.")  "The 'applicable commitment period' in § 1325(b) is a temporal requirement ... [and] the statutory concept of 'completion' of payments includes the completion of the requisite period of time." *Flores*, 735 F.3d at 860 (internal quotation marks omitted) (citing *Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538, 540 (B.A.P. 9th Cir. 2007) (holding that prepayment of a chapter 13 plan does not complete the temporal elements of a plan for purposes of § 1329)).  "Although § 1329(a) states that the plan 'may be modified' only within the prescribed time, when this language is read in the context of § 1329 as a whole, it is clear that it is referring to the time when the modification may be requested, not to the time within which the bankruptcy court may approve the modification." *Germeraad v. Powers*, 826 F.3d 962, 969 (7th Cir. 2016) (noting that bankruptcy court would have the power to approve the modification if the motion was filed prior to the final payment within the terms of the plan); *see Meza v. Truman (In re Meza)*, 467 F.3d 874, 879–80 (5th Cir. 2006); *In re Jacobs*, 263 B.R. 39, 43 (Bankr. N.D.N.Y. 2001) (denying chapter 13 trustee's motion to modify plan after completion of temporal terms and final payment of the plan).

Here, the Sangamayas filed their Modification Motion on February 23, 2017, which was (barely) both before the temporal completion of the terms of their chapter 13 plan (February 28, 2017) and before the date the Sangamayas' final payment to the Trustee posted (February 28, 2017).  Accordingly, the Bankruptcy Code's temporal limits under § 1325(b)(1)(B) do not bar the Court from considering the Modification Motion.

Courts disagree on whether to give a *res judicata* effect to the original confirmed plan. On one hand, some courts "will only entertain a proposed modification … if the movant shows that there has been a 'substantial and unanticipated' post-confirmation change in the debtor's circumstances." *In re Salpietro*, 492 B.R. 630, 635–36 (Bankr. E.D.N.Y. 2013); *see, e.g., Murphy v. O'Donnell (In re Murphy),* 474 F.3d 143, 150 (4th Cir. 2007); *Anderson v. Satterlee (In re Anderson),* 21 F.3d 355, 358 (9th Cir. 1994); *Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle),* 12 F.3d 1008, 1011 (11th Cir. 1994) (requiring an unforeseen, but not necessarily substantial, change); *In re Fitak,* 121 B.R. 224, 226–27 (S.D. Ohio. 1990). On the other hand, other courts find that a motion to modify does not require a threshold showing of changed circumstances. *See e.g.*, *In re Witkowski,* 16 F.3d 739, 742–46 (7th Cir. 1994) ("By its terms, § 1329 does not provide for any threshold requirement to modify a bankruptcy plan."); *accord Meza,* 467 F.3d at 877–78; *Barbosa v. Solomon*, 235 F.3d 31, 38–41 (1st Cir. 2000); *Ledford v. Brown (In re Brown)*, 219 B.R. 191, 195 (B.A.P. 6th Cir. 1998); *In re Guillen*, No. 15-64860-JRS, 2017 WL 1323428, at *5 (Bankr. N.D. Ga. Apr. 10, 2017).

This Court need not and, therefore, does not decide the *res judicata* issue; as there is no opposition to the Modification Motion, and because there is no statutory bar to granting the requested modification, the Modification Motion will be granted.

The Court does, however, note as follows. For a plan to be modified after confirmation under § 1329(b), it must meet the requirements of §§ 1322(a), 1322(b), 1323(c), and 1325(a). Section 1322(a) provides that a plan "shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan[.]" 11 U.S.C. § 1322(a); *see In re Etwaroo*, 546 B.R. 516, 521 (Bankr. E.D.N.Y. 2016). Section 1323(c) provides that a secured creditor that "has

accepted or rejected the plan is deemed to have accepted or rejected … the plan as modified, unless the modification provides for a change in the rights of such holder … and such holder changes such holder's previous acceptance or rejection." 11 U.S.C. § 1323(c).  Section 1325(a), in relevant part, provides that the modified plan "must also be proposed in good faith under § 1325(a)(3), must meet the 'best interest test' of distributing more value to creditors than they would receive in liquidation under § 1325(a)(4), and must be feasible in that the debtor is able to comply with the plan under § 1325(a)(6)." *Etwaroo*, 546 B.R. at 521.  Additionally § 1325(a)(5), addresses the treatment of secured creditors. *See supra*.  "Finally, courts are not required to approve all proposed modifications and practical experience shows that not all modifications are approved." *Guillen*, 2017 WL 1323428, at *6.  There is no evidence before the Court that the Modification Motion fails to meet any of the requirements under § 1329(b).

This Court notes its concern over the Sangamayas waiting over 18 months to file their Modification Motion after they stopped paying their mortgage.  On April 14, 2014, the Sangamayas disclosed net income of $273.70, which took into account their mortgage payments; they apparently stopped making mortgage payments on August 1, 2015, but took no action to amend their schedules to reflect the family illness of Mr. Sangamaya which significantly reduced his work time and their income.  It would certainly have been better for the Sangamayas' counsel to have been proactive and diligent in bringing these issues to the Court's attention much sooner and with greater clarity.

However, again, as there is no opposition to the Modification Motion, and there is no jurisdictional bar to granting the requested relief, and as it had been common practice in this district for chapter 13 debtors to receive a discharge even when they have failed to make direct mortgage

payments, the Modification Motion will be granted.  As such, the Court need not and will not address the Sangamayas' request for a hardship discharge pursuant to § 1328(b).[10]

Therefore, this Court finds and concludes as follows:

1.  A chapter 13 debtor's direct payments to a secured creditor pursuant to a "cure and maintain" plan are "payments under the plan" for purposes of § 1328(a), and a debtor who fails to make such payments is not entitled to a discharge under 11 U.S.C. § 1328(a).

2.  Coughlin's Discharge Order should not be vacated or revoked because he did not obtain his discharge by fraud and the Court did not issue the discharge order through mistake or inadvertence.

3.  The Sangamayas may modify their confirmed chapter 13 plan because the timing of the Modification Motion is not barred by the Bankruptcy Code, no opposition was filed thereto, and granting their discharge is consistent with prior practice in this district, and the Sangamayas' counsel's request for $500 is also approved.

An Order consistent herewith will issue in each of these cases.

---

[10] Additionally, the Court will not address the Sangamayas' request for an Order amending the Order voiding the Sangamaya Second Mortgage.



**Dated: June 15, 2017**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**